**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH R. REISINGER,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:07-1221** |
| **v.** | : | **(MUNLEY, D.J.)** |
| | | **(MANNION, M.J.)** |
| **SENECA SPECIALTY INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant** | : | |
| | : | |

## REPORT AND RECOMMENDATION

Pending before the court is the defendant's motion for summary judgment. (Doc. No. 44). Based upon the court's review of the motion and related materials, it is recommended that the motion be granted on the basis that the plaintiff lacked standing to pursue the claims raised in the instant action at the time the action was filed.

By way of relevant procedural history, on January 24, 2007, the plaintiff initiated the instant action in the Court of Common Pleas of Luzerne County alleging breach of contract and bad faith on the part of the defendant in relation to payment on a fire insurance policy. On July 6, 2007, the action was removed to this court. (Doc. No. 1).

A scheduling order was issued on July 12, 2007, (Doc. No. 3), and a case management conference was held on August 16, 2007, which resulted in the establishment of case management deadlines, (Doc. No. 12).

On June 24, 2008, the defendant filed a motion for judgment on the

pleadings based upon accord and satisfaction or, in the alternative, to stay and compel appraisal. (Doc. No. 22). After briefing and consideration of the motion, on March 2, 2009, the court entered an order granting in part and denying in part the defendant's motion. (Doc. No. 30). The motion was granted to the extent that the parties were directed to have their appraisers select an umpire and submit their differences with respect to the exchanged loss valuations to the umpire for decision. The parties were to thereafter submit a written status report to the court with respect to the progress being made in the appraisal process. In light of the posture of the case, the parties were forewarned that extensions of time would only be considered in the most urgent of circumstances.

On April 20, 2009, at an in-court status conference set on the matter, (Doc. No. 31), the parties submitted written status reports, (Doc. No. 32, Doc. No. 33). At the close of the conference, an order was entered again setting deadlines for the parties to agree upon a neutral umpire to resolve the dispute with respect to the parties' appraisals and valuations. (Doc. No. 34). The court noted that, should the parties not be able to amicably agree upon an umpire, one would be appointed by the court. In addition, since deadlines for discovery and dispositive motions had by then passed, the court indicated that it would entertain either a stipulation for continuation of the case management deadlines for a reasonable period of time, or motions and briefs to extend the deadlines. A stipulation of extension of deadlines was filed on April 27, 2009,

2

(Doc. No. 36), and approved by order of court dated the same day, (Doc. No. 37).

In accordance with the court's order of April 20, 2009, because the parties could not amicably agree upon a neutral umpire, by order dated May 20, 2009, the court appointed a neutral umpire. (Doc. No. 39).

Upon motion of the defendant, with concurrence of the plaintiff, an order was entered on November 6, 2009, granting another extension of the pre-trial deadlines. (Doc. No. 43).

On April 26, 2010, the instant motion for summary judgment was filed on behalf of the defendant, (Doc. No. 44), along with a statement of material facts, (Doc. No. 45), and a supporting brief, (Doc. No. 46). On May 14, 2010, the plaintiff requested an extension of time to respond to the defendant's motion for summary judgment, (Doc. No. 48), which was granted by order dated May 18, 2010, (Doc. No. 49). On June 8, 2010, the plaintiff requested a second extension of time to respond to the defendant's motion, (Doc. No. 50), which was granted by order dated June 11, 2010, with a specific indication that no further extensions of time would be granted, (Doc. No. 52). On June 21, 2010, the plaintiff requested a third extension of time to respond to the defendant's motion. (Doc. No. 53). By order dated June 22, 2010, the court denied the plaintiff's motion for extension of time noting that the case had been pending for a period just short of three years and had been delayed multiple times by the actions, and inactions, of the plaintiff. The plaintiff was

3

advised that he could file an untimely response to the defendant's motion, but that the court, in its discretion, could consider, or not consider, the arguments raised in the untimely filing as it deemed appropriate. (Doc. No. 54). On June 24, 2010, the plaintiff filed his untimely response to the motion for summary judgment, (Doc. No. 55), along with an opposing brief, (Doc. No. 56), and an answer to the defendant's statement of material facts with a counterstatement of facts, (Doc. No. 57). After having been granted a brief extension of time to do so, (Doc. No. 60), on July 15, 2010, the defendant filed a reply brief, (Doc. No. 61), along with a response to the plaintiff's counterstatement of material facts, (Doc. No. 62).

At the request of defense counsel, with the concurrence of plaintiff's counsel, on March 3, 2011, oral argument was held on the defendant's motion for summary judgment. At the oral argument, plaintiff's counsel informed the court that a Bankruptcy Court ruling on February 7, 2011, could impact this court's summary judgment ruling. Despite the date of the Bankruptcy Court ruling, counsel waited until the time of oral argument to formally disclose this information to the court and defendant's counsel. In light of this information, the court gave the parties additional time to file supplemental briefs addressing what impact, if any, the February 7, 2011, Bankruptcy Court ruling would have on the instant motion for summary judgment.

On the day supplemental briefs were due, the plaintiff's counsel filed a motion for extension of time requesting an additional month to file his

supplemental brief claiming an inability to meet with the plaintiff until the end of March because of ". . . Plaintiff's existing schedule, tax season commitments, pending sophisticated tax issues, responsibilities for tax returns due 3-15-11, the significant temporary but lengthy absence/illness of his very experienced lead tax accountant and other staff members, about three third circuit briefs due 3-18-11, a large complex consolidated action is due by 3-11-2011, multiple motions in regards to properties listed for tax sale are due before March 23, 2001." (Doc. No. 69). By order dated March 14, 2011, citing to the numerous delays caused mainly by the plaintiff, but also by the defendant, the court denied the plaintiff's request for an extension of approximately one month to file his brief and directed that the supplemental briefs be filed on or before March 18, 2011. The court specifically noted that no further extensions of time would be granted and that untimely briefs would not be considered. (Doc. No. 71). On March 18, 2011, the defendant filed its supplemental brief. (Doc. No. 72). As of the date of this report, no supplemental brief has been filed by the plaintiff.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

". . . [T]he plain language of Rule 56(c) mandates the

5

> entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence nor make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn

6

therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

The following facts provided in the defendant's statement and the plaintiff's counterstatement of material facts are supported by the record and are not in dispute[1]. The plaintiff is an attorney and, at times relevant to this litigation, the sole owner of Joseph R. Reisinger, Esquire, P.C., located at 444 South Franklin Street, Wilkes-Barre, Pennsylvania 18702[2]. The plaintiff is also engaged in the business of owning and operating commercial real estate. At times relevant to this litigation, the plaintiff had an ownership interest in approximately fifty-eight residential rental properties.

---

[1]The court notes that, after having requested three extensions of time to do so, the plaintiff submitted an untimely response to the defendant's statement of material facts which consumes some forty-four pages and which, with subparts, consists of over 100 numbered paragraphs (as opposed to the defendant's statement of material facts which is seven pages in length and consists of thirty-three numbered paragraphs). Contrary to Local Rule 56.1, a number of the plaintiff's opposing statements of fact and a majority of the plaintiff's counterstatements of fact do not contain references to the parts of the record that support the statements. It is not the duty of the court to examine the record to find support for the plaintiff's statements of fact. Therefore, those statements provided by the plaintiff which do not contain the required record citations have not be considered by the court.

[2]Except where facts are disputed, supporting record citations to material facts have not been included herein.

In January 2005, a fire occurred at an office/apartment building located at 448-450 South Franklin Street, Wilkes-Barre, Pennsylvania. This property was owned by the plaintiff and covered by a property insurance policy issued by the defendant. The insurance policy had an effective date of May 11, 2004, through May 11, 2005.

After the fire, the plaintiff filed a Notice of Loss and the defendant inspected the property and adjusted the loss. Pending final adjustment of the claim, the defendant advanced the sum of $25,000 to the plaintiff in the form of a check dated February 14, 2005.

On April 5, 2005, the defendant issued a check to the plaintiff in the amount of $130,148.46 and stated on the check that it was the "final payment of claim."

On April 15, 2005, an adjuster retained by the defendant sent the plaintiff a Statement of Loss, Valuation and Co-Insurance Schedule, which showed that the net amount of the claim, as adjusted, was the sum of $155,148.46.

On April 20, 2005, unbeknownst to the defendant, the plaintiff filed a Chapter 7 Bankruptcy petition in the United States Bankruptcy Court, Middle District of Pennsylvania. See In re Reisinger, Bankruptcy Petition No. 5:05-bk-52172 (Thomas, J.)[3].

---

[3]The court may take judicial notice of the docket entries in In re:
(continued...)

On or about April 25, 2005, the plaintiff endorsed and cashed the final check issued by the defendant in the amount $130,148.46. The plaintiff also sent a letter to the adjuster indicating that he was not accepting the check as a final payment.

In the plaintiff's bankruptcy filing, the plaintiff identifies the fire on January 25, 2005, under "Losses" in the "Statement of Financial Affairs." Specifically, the plaintiff stated:

> Fire [of 1/25/05] on the 450 South Franklin Street side of building. Received emergency cash advance of $25,000.00. Placed into escrow account. Have hired contractor, have completed trash removal, now starting demolishing of the roof for replacement. Have spent $8,000 on repairs. Expect to receive check for $130,000.00 in our name and 2 bank's name for all of the substantial necessary repairs that are needed.

In addition, the plaintiff listed as "Property held for another person" the following, referencing the location of the property at 448-450 South Franklin Street:

> Check for $25,000.00 from Seneca Insurance Company is in an escrow account to start repairs on the building. Have used $7,000.00 of money for various projects such as securing the building. Will start clean out and demolition of the burnt out roof in April.

---

[3](...continued)
Reisinger, Bankruptcy Petition No. 5:05-bk-52172 (Thomas, J.). See Fed.R.Evid. 201. See also Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 n.3 (3d Cir. 1988), cert. denied, 488 U.S. 967 (1988)(a court may take judicial notice of the record from a previous court proceeding); Harris v. Martinez, 2008 WL 1752227 (M.D.Pa.) (Jones, J.).

In his bankruptcy schedules, the plaintiff did not disclose either the
Seneca insurance policy or any legal claims, actual or potential, against
Seneca related to the policy[4].

---

[4]The plaintiff disputes this fact stating that he did disclose the fire loss
claim as an asset or potential asset citing to the above language in his
Statement of Financial Affairs. However, the term "scheduled" has been given
a specific meaning in §521(1), referring only to those assets listed in a
debtor's schedules of assets and liabilities. See In re Bonner, 330 B.R. 880
(Table) (6th Cir. BAP (Ohio), 2005). See also Conklin v. St. Lawrence Valley
Educational Television Council, Inc., 1994 WL 780898 (N.D.N.Y.) (citing In Re
McCoy, 139 B.R. 430, 431 (Bankr.S.D.Ohio 1991)); In re Kane, 2010 WL
2757346 (N.D.Cal.); In re Munoz-Gonzales, 2001 WL 34076433
(Bankr.C.D.Ill.); Johnson v. U.S., 49 Fed.Cl. 648 (2001); Vucak v. City of
Portland, 96 P.3d 362 (Or.App. 2004). Moreover, it has been held that a
debtor can fail to schedule an asset by listing it in an incorrect location within
the bankruptcy petition. Vucak v. City of Portland, 96 P.3d at 365-66 (citing
In re Fossey, 119 B.R. 268, 272 (Bank.C.D.Utah 1990)(debtor listed cause of
action in his Statement of Financial Affairs but not in his Schedules of Assets
and Liabilities; cause of action was not scheduled under section 521(c) and
could not be abandoned); In re Harris, 32 B.R. 125, 127 (Bankr.S.D.Florida
1983)(reference to partnership in statement of financial affairs not enough to
schedule debtor's interest in mortgages held by partnership)). See also In re
Kane, 2010 WL 2757346, at *2 (mentioning an asset in the statement of
financial affairs is not the same as scheduling it).
     Moreover, while the plaintiff indicates that he "properly disclosed" the
fire loss claim and that his description of the matter was only meant to be "a
brief non exhaustive history" of the claim in compliance with the relevant
section of the Statement of Financial Affairs, the court notes that the
information provided by the plaintiff does not even comply with the directives
provided in the Statement of Financial Affairs. To this extent, the plaintiff was
to provide a description and value of the property involved. While the plaintiff
provided a general description of the property by indicating the address,
nowhere does he provide the value of the property. Then, the plaintiff was to
provide a "description of the circumstances and, if loss was covered in whole
(continued...)

In the course of the plaintiff's bankruptcy proceedings, by order dated December 29, 2005, the bankruptcy judge ordered that "the Trustee shall abandon all real estate of the Debtor pursuant to 11 U.S.C. §554, with the exception of the parcels secured by claims held by M&T Bank." (Doc. No. 57, Ex. 1). Thereafter, on March 15, 2006, the court entered an amended order which read that ". . . all of the Debtor's pre-petition rental properties, consisting of the real property listed on Schedule A of the Debtor's bankruptcy schedules, presently owned by the estate, are hereby abandoned pursuant to Bankruptcy Code section 554, with the exception of the parcels secured by claims held by M&T Bank." (Doc. No. 57, Ex. 2)[5].

On January 24, 2007, while the bankruptcy proceedings were still pending, the plaintiff initiated the instant action against the defendant by filing

---

[4](...continued)
or in part by insurance, give **particulars**." (Doc. No. 44, Ex. 1, Statement of Financial Affairs)(emphasis added). The plaintiff's "brief non exhaustive history" does not "give particulars" with respect to any coverage of the property. Instead, he generally indicated that he had received an emergency payment and was expecting an additional payment "for all of the substantial necessary repairs that are needed."

Further, the instructions provided for completing the Statement of Financial Affairs form indicated, with respect to the "Losses" section, that any "pending claims from insurance coverage should also be included in Schedule B [of the Schedules of Assets and Liabilities]," which the plaintiff did not do. (See Doc. No. 61, Ex. 9).

[5]There is no dispute that the real property covered by the policy at issue was included in the properties referenced in the abandonment order.

a writ of summons in the Court of Common Pleas of Luzerne County, Pennsylvania, which the defendant removed to this court. In this action, the plaintiff claims that the defendant failed to properly adjust the loss resulting from the fire in January 2005 and failed to pay the full value of the fire loss claim. The plaintiff also alleges that the defendant is liable to him for "bad faith conduct" towards him "during the course of their contractual relationship and arising from a policy of insurance."

The bankruptcy trustee filed a Trustee's Final Report in the bankruptcy action on October 30, 2009[6]. Thereafter, the trustee learned of the instant action and contacted defendant's counsel and expressed his position that the claims raised in the instant action are assets of the bankruptcy estate[7].

On January 25, 2010, the plaintiff filed a lawsuit against the bankruptcy trustee and the trustee's professional corporation in the Court of Common Pleas of Luzerne County. In the complaint, the plaintiff alleged fraudulent misrepresentation and tortuous interference with contractual relationships as they relate to the plaintiff's interest in forty-seven properties, including the property at issue in this action. The docket in that action reflects that the case

---

[6]Although the parties indicate that the date of the final report was September 9, 2009, the bankruptcy docket reflects a file date of October 30, 2009. (See In re: Reisinger, 5:05-bk-52172, Docket Entry 422).

[7]The plaintiff does not dispute this fact indicating that this is also his understanding of the trustee's position, but only claims that there are no written documents to reflect this. (Doc. No. 57, ¶27).

was removed to this court on February 16, 2010, and by order dated June 30, 2010, the action was dismissed for the plaintiff's failure to prosecute. See Reisinger v. Slobodian, Civil Action No. 3:10-CV-0334 (Nealon, J.).

On October 7, 2010, an Amended Chapter 7 Trustee's Final Report was filed in the bankruptcy action. (See In re: Reisinger, 5:05-bk-52172, Docket Entry 430).

On February 7, 2011, the Chapter 7 Trustee's Final Account was filed along with a certification that the estate had been fully administered. (See In re: Reisinger, 5:05-bk-52172, Docket Entry 436). The documents filed by the trustee along with the final account, which were the subject of the oral argument held on the instant motion for summary judgment on March 3, 2011, reflect that an unscheduled insurance policy valued at $20,000 was abandoned by the trustee pursuant to 11 U.S.C. §554(c).

In the pending motion for summary judgment, the defendant argues that the plaintiff lacks standing to assert his breach of contract and bad faith claims against the defendant because such claims belong to the bankruptcy estate. (Doc. No. 46, pp. 7-11). In response, the plaintiff does not take issue with the fact that the fire insurance policy, any contingent proceeds, and any legal claims related to the policy became property of the bankruptcy estate once he filed his Chapter 7 petition. The plaintiff argues, instead, that the record establishes that the bankruptcy trustee abandoned his property back to him when the real property was abandoned back to him. By reason of the

13

abandonment, the plaintiff argues that he was vested with all the rights, title and interest of the property, including the right to the insurance proceeds at issue.

> With respect to abandonment, the Bankruptcy Code provides as follows:
>
> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
>
> (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. §554.

The only argument raised by the plaintiff in his brief in opposition to the motion for summary judgment is that the policy at issue was abandoned pursuant to §554(b). To this extent, the plaintiff petitioned the bankruptcy court requesting that the trustee be compelled to abandon fifty-two real properties owned by the plaintiff at the time he filed his Chapter 7 petition, including the property at 448-450 South Franklin Street, which was covered by the policy at issue. The bankruptcy court granted the plaintiff's petition, issuing an initial order on December 29, 2005, (Doc. No. 57, Ex. 1), and an

amended order on March 15, 2006, (Doc. No. 57, Ex. 2). In the amended order, the bankruptcy court directed that "all of the Debtor's pre-petition rental properties, **consisting of the real property listed on Schedule A of the Debtor's bankruptcy schedules**, presently owned by the estate, are hereby abandoned pursuant to Bankruptcy Code section 554, with the exception of the parcels secured by claims held by M&T Bank." (Emphasis added). No reference is made, however, to abandonment of the fire insurance policy which covered the property, the policy proceeds, or any legal claims related thereto[8].

Implicit in the plaintiff's argument on the matter is that the fire insurance policy at issue ran with the real property and was therefore automatically abandoned when the real property was abandoned pursuant to §554(b). However, under Pennsylvania law[9], an interest in the debtor's real property and an interest in the insurance proceeds arising from damages to that property are two distinct things. Specifically, Pennsylvania courts have consistently held that insurance contracts are personal contracts of indemnity

---

[8]The court further notes that the plaintiff, who made the motion to compel abandonment, failed to make any request to abandon these assets. See Bankruptcy Petition No. 5:05-bk-52172, (Doc. No. 53).

[9]Whether property is "property of the estate" is a question of federal law pursuant to §541. However, the determination as to what interests fall within this description must be made according to state law. In re Fox, 80 B.R. 753, 756 (Bankr.W.D.Pa. 1987)(citing  In re Farmer's Market, Inc., 792 F.2d 1400 (9th Cir. 1986); In re Brass Kettle, 790 F.2d 574 (7th Cir. 1986)).

and that they protect the insured's interest in the property, but that they are not an indemnity on the property itself. In re CS Associates, 161 B.R. 144 (Bankr.E.D.Pa.1993) (citing In re Gorman's Estate, 184 A. 86, 87 (Pa. 1936) (an insurance policy is a personal contract that exists between the insurer and insured; the building itself is not insured); Mutual Benefit Ins. Co. v. Goschenhoppen Mut. Ins. Co., 572 A.2d 1275, 1277 (Pa.Super. 1990) (a fire insurance policy is a personal contract of indemnity on the insured's interest in the property and not on the property itself); McDivitt v. Pymatuning Mut. Fire Ins. Co., 449 A.2d 612, 615 (Pa.Super. 1982) (a husband who owned property as a tenant by the entireties with his wife had no interest in proceeds from insurance covering the property since the contract was a personal contract between the wife and the insurer and did not pertain directly to the insured property)). Therefore, neither the policy of insurance in this case nor the rights related thereto would automatically run with the real property at issue and any claim by the plaintiff to the contrary is without merit.

In a further attempt to establish that the assets at issue were abandoned at the time of the abandonment of the real property, the plaintiff provides a letter from his bankruptcy attorney, Ronald V. Santora, to the bankruptcy trustee, Markian R. Slobodian, (Doc. No. 57, Ex. 4), as well as an affidavit prepared by Attorney Santora for an unrelated civil proceeding, (Doc. No. 57, Ex. 5), which reflect Attorney Santora's understanding, based on conversations with the trustee, of the state of the insurance policies and rights

related thereto[10]. According to these materials, Attorney Santora advised the plaintiff that he became the owner of both the legal and equitable interests related to the abandoned properties and that he became the owner of each of the property insurance policies that were related to the properties and that any contract rights related to the policies were abandoned by the trustee along with the real properties.

However, whatever the understanding of the plaintiff's attorney from conversations with the bankruptcy trustee, there is no informal abandonment of property of an estate. In re Hat, 363 B.R. 123, 138 (Bkrtcy.E.D.Cal. 2007) (citing Catalano v. C.I.R., 279 F.3d 682, 686 (9th Cir. 2002) ("In short, [a]bandonment requires formal notice and a hearing.") (citations and internal quotes omitted). It is undisputed that the policy, policy proceeds, and any related legal claims were not among the assets listed in the motion for abandonment filed by the petitioner or in the order of abandonment entered by the court. They were not therefore abandoned pursuant to §554(b).

Abandonment is not a process to be taken lightly. Once an asset is abandoned, it is removed from the bankruptcy estate, and this removal is irrevocable except in very limited circumstances. See Chartschlaa v.

---

[10]The court notes that it accepts these filings, not for the truth of the matter of what was stated to Attorney Santora by the bankruptcy trustee, but only for what the understanding was of Attorney Santora to which he could certainly testify based upon his own personal knowledge.

Nationwide Mut. Ins. Co., 538 F.3d 116, 123 (2nd Cir. 2008) (citing Catalano v. Comm'r, 279 F.3d 682, 686 (9th Cir. 2002)). In light of the impact of abandonment on the rights of creditors, intent to abandon an asset must be clear and unequivocal. Id. (citing In re Sire Plan, Inc., 100 B.R. 690, 693 (Bankr.S.D.N.Y.1989)). See also In re: Wiesner, 267 B.R. 32, 38 (Bankr.D.Mass. 2001)(citing Billingham v. Wynn & Wynn, P.C. (In re Rothwell), 159 B.R. 374, 377 (Bankr.D.Mass. 1993)).

Here, in the record before the court, while there was a clear and unequivocal intent to abandon the real property at 448-450 South Franklin Street pursuant to §554(b), there was no clear and unequivocal intent to abandon the policy at issue, proceeds from the policy, or legal claims related to the policy, all of which the plaintiff does not dispute were property of the bankruptcy estate. The court finds, therefore, that there was no abandonment of the policy, the proceeds of the policy, or any legal claims related thereto, pursuant to the plaintiff's request under §554(b). This is the only provision of abandonment relied upon by the plaintiff to establish standing in response to the defendant's motion for summary judgment. Because the court finds that there was no abandonment pursuant to §554(b), the court also finds that this provision does not provide the plaintiff with the requisite standing in order to assert the claims raised in the instant action.

Most recently, on March 3, 2011, during oral argument on the instant motion for summary judgment, the plaintiff argued that, even if the policy had

not previously been abandoned pursuant to §554(b), as of February 7, 2011, when the bankruptcy trustee filed his final account, the policy was abandoned pursuant to §554(c) as shown by the reference by the bankruptcy trustee to the abandonment of an unscheduled insurance claim in the amount of $20,000. The plaintiff argued that, even if he did not have standing before, he now has standing to assert the claims raised in the instant action.

Based upon the court's review of the final account, it is far from "clear and unequivocal" that the unscheduled insurance claim referenced as being abandoned is the one related to the instant action. However, even if the court could find that it were, the abandonment would not provide the plaintiff with the necessary standing to proceed with the instant action. At the time the plaintiff filed the instant action, as discussed above, neither the policy nor any legal claims related thereto had been abandoned. Where a debtor lacks standing at the commencement of a case because the asserted claims belong to the bankruptcy trustee, the standing defect is fatal to the debtor's claims. See Schafer v. Decision One Mortgage Corp., 2009 WL 1886071 at *5 (E.D.Pa.) (citing Tyler House Apartments, Ltd. v. United States, 38 Fed.Cl. 1, 7 (Fed.Cl. 1997) (granting defendant's motion for summary judgment because, *inter alia*, plaintiff's claims properly belonged to the bankruptcy trustee and "no entity with standing brought a timely action in this court. Thus, as of [the date the Complaint was filed], the court had no jurisdiction. The lack of standing, a jurisdictional defect, therefore cannot be cured *nunc pro*

19

*tunc* back to the date when the original complaint was filed."); Ball v. Nationscredit Financial Services Corp., 207 B.R. 869, 872 (N.D.Ill. 1997) ("[s]tanding goes to the court's jurisdiction and must exist at the time the action was filed. If [plaintiff debtor] lacked standing at the time this action was filed, the suit must be dismissed even if she later acquired an interest sufficient to support standing.")). Here, even if it could be said that the plaintiff acquired an interest to support standing as of February 7, 2011, when he filed the instant action back on January 24, 2007, he did not have standing to pursue the instant claims as those claims belonged to the bankruptcy trustee. Because the plaintiff cannot establish standing as of the time he commenced the instant action (and for a period of over four years while the instant action was pending), the defendant's motion for summary judgment should be granted to the extent that the defendant argues that the plaintiff's lacked standing to bring the instant claims[11].

> On the basis of the foregoing, **IT IS RECOMMENDED THAT:**
>
> the defendant's motion for summary judgment, **(Doc. No.** 44**)** be
>
> **GRANTED** as the plaintiff lacked standing to pursue the claims

---

[11]In its motion for summary judgment, the defendant also raises an argument with respect to judicial estoppel. However, because the court has determined that the plaintiff did not have standing to bring the instant action, it is unnecessary to address the judicial estoppel argument.

raised in the instant action at the time it was filed.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**


**Date:** March 21, 2011

O:\shared\REPORTS\2007 Reports\07-1221-01.wpd